**GREENSPOON MARDER LLP**
Kelly M. Purcaro, Esq.
Kory Ann Ferro, Esq.
One Gateway Center, Suite 2600
Newark, New Jersey 07102
Tel.: (732) 456-8734 or 8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com
*Attorneys for Defendant US Data Corporation*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons,* JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN,<br><br>Plaintiffs,<br><br>v.<br><br>US DATA CORPORATION, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities,*<br><br>Defendants. | Case No.: 2:24-cv-07324<br><br>Civil Action<br><br>**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND DEMAND FOR JURY TRIAL** |

Defendant US Data Corporation ("US Data"), by and through its undersigned

counsel, hereby timely responds to the Complaint filed by Plaintiffs, Atlas Data

Privacy Corporation, *as assignee of individuals who are Covered Persons*, Jane Doe-

1

1, *a law enforcement officer*, Jane Doe-2, *a law enforcement officer*, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan ("Plaintiffs"). The headings and Paragraph numbers below correspond to the Paragraphs contained in the Complaint.

## **INTRODUCTION**

1.    US Data denies that it is one of the alleged "uncooperative profit-seeking data brokers" as described in Paragraph 1 of the Complaint. US Data is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1 of the Complaint and accordingly denies the allegations.

2.    US Data denies that it "choos[es] profit and personal gain over a critical public interest and the unequivocal mandate of the law" or that operates "without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles" as described in Paragraph 2 of the Complaint.  US Data is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 2 of the Complaint and accordingly denies the allegations.

3.    US Data denies that it "wantonly and repeatedly disregard[s] the law" or "demonstrate[s] a callousness towards the well-being of those who serve" as described in Paragraph 3 of the Complaint.  US Data is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 3 of the Complaint and accordingly denies the allegations.

4.  US Data admits that Plaintiffs filed this action. US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint and accordingly denies the allegations.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5.  US Data admits the allegations contained in Paragraph 5 of the Complaint.

6.  US Data admits the allegations contained in Paragraph 6 of the Complaint.

7.  US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint.

### New Jersey Passes Daniel's Law in 2020

8.  US Data admits that Daniel's Law is codified in *N.J.S.A.* 47:1a-1, *et seq.* and *N.J.S.A.* 56:9-166.1 and such statute speaks for itself and is the best evidence of its contents.  US Data is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 8 of the Complaint and denies same to the extent they incorrectly state a conclusion of law.

9.     US Data admits that Daniel's Law is codified in *N.J.S.A.* 47:1a-1, *et seq.* and *N.J.S.A.* 56:9-166.1 and such statute speaks for itself and is the best evidence of its contents.  US Data is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 9 of the Complaint and denies same to the extent they incorrectly state a conclusion of law.

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

10.     US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint.

11.     US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint.

12.     US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint.

**Violence Against Police Officers and Judges Has Not Stopped**

13.     US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint.

14.     US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint.

## THE PARTIES

### The Individual Plaintiffs

15.     US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint and accordingly leaves Plaintiffs to their proofs.

16.     US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint and accordingly leaves Plaintiffs to their proofs.

17.     US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint and accordingly leaves Plaintiffs to their proofs.

18.     US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint and accordingly leaves Plaintiffs to their proofs.

19.     US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint and accordingly leaves Plaintiffs to their proofs.

20.     US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint and accordingly leaves Plaintiffs to their proofs.

21.    US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint and accordingly leaves Plaintiffs to their proofs.

22.    US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint and accordingly leaves Plaintiffs to their proofs.

23.    US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint and accordingly leaves Plaintiffs to their proofs.

24.    US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Complaint and accordingly leaves Plaintiffs to their proofs.

**Plaintiff Atlas and its Assignors**

25.    US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Complaint and accordingly leaves Plaintiffs to their proofs.

26.    US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint and accordingly denies the allegations.

27.    US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint and accordingly denies the allegations.

28.    US Data denies the allegations contained in Paragraph 28 of the Complaint and accordingly denies the allegations.

29.    US Data denies the allegations contained in Paragraph 29 of the Complaint.

30.    US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint and accordingly denies the allegations.

31.    US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Complaint and accordingly denies the allegations.

32.    US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint and accordingly denies the allegations.

33.    US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint and accordingly denies the allegations.

34.    US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the Complaint and accordingly denies the allegations.

35.    US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint and accordingly denies the allegations.

36.    US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Complaint and accordingly denies the allegations.

**<u>Defendants</u>**

37.    US Data denies the allegations contained in Paragraph 37 of the Complaint.

38.    US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of the Complaint as it references unidentified "Richard Roe" individuals and "ABC Companies."  To the extent Paragraph 38 contends that employees of US Data were engaged in any wrongdoing, US Data denies same.

39.    US Data is a business-to-business direct marketing agency specializing in providing marketing solutions, marketing lists, and data services.  US Data operates, in part, through usdatacorporation.com.  US Data denies the remaining

allegations contained in Paragraph 39 of the Complaint and accordingly leaves Plaintiffs to their proofs.

40.    US Data admits that customers, who agree to a quote that contains certain terms and conditions, may purchase products and services offered by US Data, such as business lists, consumer lists, mailing lists, direct mail and email marketing solutions, and advertising. US Data denies the remaining allegations contained in Paragraph 40 of the Complaint.

41.    US Data denies that the characterizations of services alleged in Paragraph 34 of the Complaint apply to US Data and further denies that US Data "disclose[s]" information "without sufficient regard to the risks and consequences imposed on individuals." US Data is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 41 of the Complaint and accordingly leaves Plaintiffs to their proofs.

## JURISDICTION AND VENUE

42.    Paragraph 42 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, US Data denies that state court, where the Complaint was filed, had jurisdiction, which is why the matter was properly removed to federal court.

43.    Paragraph 43 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a

9

response is required, US Data denies the allegations in Paragraph 43 of the Complaint as venue in Morris County was not proper resulting in the removal of this matter from state court to federal court.

## FACTS COMMON TO ALL COUNTS

44.     Paragraph 44 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, US Data admits that Daniel's Law is codified in *N.J.S.A.* 47:1a-1, *et seq.* and *N.J.S.A.* 56:9-166.1.

45.     Paragraph 45 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, US Data denies the allegations contained in Paragraph 45 of the Complaint to the extent they incorrectly state a conclusion of law.

46.     Paragraph 46 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, US Data denies the allegations contained in Paragraph 46 of the Complaint to the extent they incorrectly state a conclusion of law.

47.     Paragraph 47 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, US Data denies the allegations contained in Paragraph 47 of the Complaint to the extent they incorrectly state a conclusion of law.

48.    Paragraph 48 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, US Data denies the allegations contained in Paragraph 48 of the Complaint to the extent they incorrectly state a conclusion of law.

49.    Paragraph 49 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, US Data denies the allegations contained in Paragraph 49 of the Complaint to the extent they incorrectly state a conclusion of law.

50.    Paragraph 50 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, US Data denies the allegations contained in Paragraph 50 of the Complaint to the extent they incorrectly state a conclusion of law.

51.    US Data denies the allegations contained in Paragraph 51 of the Complaint.

52.    US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52 of the Complaint and accordingly denies the allegations.

53.    US Data denies the allegations contained in Paragraph 53 of the Complaint.

54.     US Data is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 54 of the Complaint and accordingly denies the allegations.

55.     US Data denies the allegations contained in Paragraph 55 of the Complaint.

## COUNT ONE
**(Daniel's Law)**

56.     US Data repeats, realleges, and incorporates by reference each of the preceding paragraphs of this Answer as if fully set forth herein.

57.     US Data denies the allegations contained in Paragraph 57 of the Complaint.

58.     Paragraph 58 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, US Data denies the allegations contained in Paragraph 58 of the Complaint to the extent they incorrectly state a conclusion of law.

59.     US Data denies the allegations contained in Paragraph 59 of the Complaint.

60.     US Data denies the allegations contained in Paragraph 60 of the Complaint.

61.     US Data denies the allegations contained in Paragraph 61 of the Complaint.

**WHEREFORE**, US Data demands judgment against Plaintiffs dismissing their Complaint with prejudice, awarding US Data attorneys' fees and costs and granting such other and further relief as the Court deems just and proper.

As to any part of the Complaint not specifically admitted, denied, or discussed with respect to US Data, US Data hereby denies said allegations, including, but not limited to, any allegations contained in the Complaint's preamble, headings, subheadings, and wherefore clauses. Furthermore, any averments in the Complaint to which no responsive pleadings are capable or required shall be deemed denied.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof where it otherwise rests with Plaintiffs, US Data pleads the following affirmative defenses to Plaintiffs' Complaint:

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, for failure to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable Statute of Limitations.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs lack standing to bring this action as Plaintiffs have not suffered the

requisite harm required to confer standing under Article III of the United States Constitution.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs' lack standing to bring the claims by way of assignment and/or as noncovered persons.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because any alleged wrongdoing by US Data, which US Data denies, was caused by mistake. Indeed, US Data acted reasonably and in good faith at all material times based on all relevant facts and circumstances known by it at the time it acted.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of waiver.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the subject alleged speech constitutes commercial speech protected by the First

Amendment of the United States Constitution and the imposition of liability for such protected speech violates the First Amendment rights of the speaker.

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of unclean hands.

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs failed to mitigate their damages. While US Data does not concede that it has violated Daniel's Law or that Plaintiffs sustained damages, recovery (if any) should be reduced in proportion to Plaintiffs' failure to mitigate such damages.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs seek impermissible liquidated damages.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the alleged requests were sent for an improper purpose, and in an effort to manufacture and pursue litigation on a massive group action basis, not to seek compensation for damages suffered, as contemplated by statute.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of unjust enrichment.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the alleged damages Plaintiffs seek were caused in whole or in part by the acts or omissions or intervening and superseding acts of negligence or intentional conduct on the part of persons or entities over whom US Data has neither control nor right of control and for whose actions US Data is not liable.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the statutory damages provisions of the law are excessive fines and/or are grossly disproportionate to any actual harm that may have been suffered. Accordingly, such statutory damages provisions violate the United States Constitution.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the Communications Decency Act.  *See* 47 U.S.C. § 230 *et seq.*

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited as violative of the United States Constitution as applied to US Data.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for injunctive relief fail or otherwise are barred, in whole or in part, or are limited because there is neither continuing harm nor immediate danger.

## NINETEENTH AFIRMATIVE DEFENSE

US Data did not owe a duty to Plaintiffs.

## TWENTIETH AFFIRMATIVE DEFENSE

US Data did not breach any legal duty owed to Plaintiffs.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

US Data was not the actual or proximate cause of the damages claimed by Plaintiffs.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

The claims against US Data are barred by the doctrines of comparative and/or contributory negligence.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Public policy prohibits recovery by Plaintiffs against US Data.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' allegations are barred by the common law doctrine of impossibility of performance.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Atlas failed to provide full and complete information to their users regarding US Data and its services during the opt-out and/or assignment process resulting in improper opt-out requests based on misinformation and incomplete information and/or invalid assignments.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims of punitive damages fail or otherwise are barred, in whole or in part, or are limited because US Data did not engage in any acts or omissions actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. In addition, the award of such damages would violate US Data's rights under the Constitutions of the State of New Jersey and the United States of America.

## TWENTY-SEVENTY AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of laches.

## RESERVATION OF RIGHTS

US Data reserves the right to amend or add to its affirmative defenses upon discovery of additional information or evidence or as justice so requires.

**WHEREFORE**, US Data demands judgment against Plaintiffs dismissing their Complaint with prejudice, awarding US Data attorneys' fees and costs and granting such other and further relief as the Court deems just and proper.

## COUNTERCLAIMS

Defendant/Counterclaimant US Data Corporation ("US Data"), by and through its undersigned counsel, hereby complains by way of Counterclaim against Plaintiffs/Counterclaim-Defendants, Atlas Data Privacy Corporation, *as assignee of individuals who are Covered Persons*, Jane Doe-1, *a law enforcement officer*, Jane Doe-2, *a law enforcement officer*, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan ("Plaintiffs"), as follows:

## PARTIES

1.      Defendant/Counterclaimant US Data is organized under the laws of Nevada with its principal place of business in California.  It provides business-to-business direct marketing services specializing in providing marketing solutions, marketing lists, and data services.  US Data's headquarters are located at 5115 Clareton Drive, Suite 210, Agoura Hills, California 91301.  US Data provides services via interstate computer services and does not have any offices or locations within the State of New Jersey.

2.      Upon information and belief, Plaintiff Atlas Data Privacy Corporation ("Atlas") is a Delaware corporation organized under the laws of the State of Delaware with its offices located at 201 Montgomery Street, Suite 263, Jersey City, New Jersey.

3.      Upon information and belief, Jane Doe-1, *a law enforcement officer*, is or was a police officer working in Northern New Jersey.

4.      Upon information and belief, Jane Doe-2, *a law enforcement officer*, is or was a correctional police officer who lives in Northern New Jersey.

5.      Upon information and belief, Edwin Maldonado is or was a Detective with Plainfield, New Jersey's major crime unit and a Federal task force.

6.      Upon information and belief, Scott Maloney is or was a police officer in the Rahway, New Jersey Police Department.

7.      Upon information and belief, Justyna Maloney is or was a police officer in the Rahway, New Jersey Police Department.

8.      Upon information and belief, Plaintiff Patrick Colligan is or was a police Detective for the police department of Franklin Township in Somerset, New Jersey.

9.      Upon information and belief, Plaintiff Peter Andreyev is or was a police officer for the police department of Point Pleasant in Ocean County, New Jersey.

10.      Upon information and belief, William Sullivan is or was a correctional

police officer with the New Jersey Department of Corrections.

## JURISDICTION AND VENUE

11.    Jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1), as US Data is a citizen of a state different from Plaintiffs and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.    Venue is proper in this judicial district pursuant to the assignment of this case to this Court.

## FACTUAL BACKGROUND

13.    Atlas leveraged the amendments to Daniel's Law to improperly create a cottage industry for itself, whereby it designed a process upon which it could recruit "covered persons," sabotage hundreds of businesses, and profit off the legal claims of those very "covered persons" at the expense of unsuspecting companies.

14.    Atlas sought out and signed up thousands of alleged covered persons (the "Assignors"), asked that they assign their legal rights to Atlas, provided the Assignors with a preset list of target companies, and created "nondisclosure requests" on behalf of the Assignors.

15.    The "nondisclosure requests" created by Atlas were generic, autogenerated emails completely devoid of the individual information of the Assignors, which would be needed to, among other things, confirm that the tens of thousands of requests were *bona fide* requests, made on behalf of actual Covered

Persons as defined by Daniel's Law, or even authorized by the Assignors, or if the information provided was in fact "the home address or unpublished home telephone number" of any actual Covered Person (herein "Protected Information").

16.  Indeed, the requests were created and sent by Atlas, and not by the Assignors, as required by Daniel's Law.

17.  Atlas collected Assignors for about six months until it reached nearly 20,000 – all the while withholding such Assignors purported nondisclosure requests until Atlas acquired its critical mass needed to launch its attack.

18.  To be sure, if Atlas were truly concerned about the safety of the Assignors, it would have generated opt-out requests immediately upon an Assignor signing up for services, not months later.

19.  Atlas failed to verify that the Assignors qualified as Covered Persons under Daniel's Law.

20.  Atlas failed to verify that the targeted defendants, including US Data, possessed or disclosed Protected Information of the Assignors.

21.  Atlas failed to advise the Assignors of US Data's business, terms of use, privacy practices, or any other material facts about US Data.

22.  Once Atlas reached its critical mass of Assignors, according to Plaintiffs' Complaint and Atlas' subsequent productions, Atlas sent tens of thousands of emails nearly simultaneously, all from "@atlasmail.com" to

"privacy@usdatacorporation.com" rather than use US Data's already preexisting opt-out platform.

23.    US Data had and has a preexisting opt-out process, whereby opt-out requests can and could have been easily processed through the available platform on US Data's website (https://www.usdatacorporation.com/opt-out/) regardless of an individual's Covered Person status.  As such, in launching its attack, Atlas actively ignored a pre-established, user friendly opt-out platform that would have immediately removed the Assignors' data regardless of the verification of their status as a Covered Person under Daniel's Law.

24.    The Complaint[1] alleges that "each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas)" sent nondisclosure request via email to US Data from "AtlasMail" starting on or about January 17, 2024. Complaint at ¶ 51.

25.    US Data denies that the individually named Plaintiffs and all of the Assignors sent nondisclosure requests.

---

[1] February 15, 2024, Plaintiffs filed the underlying complaint against US Data in the New Jersey State Court, Law Division, Morris County (State Dkt. MRS-L-000323-24) (the "Complaint"), which was not served on US Data until June 11, 2024. On June 27, 2024, US Data filed a Notice of Removal of Plaintiffs' Complaint before this Court (Dkt. No. 1), which removal was unopposed and thereafter granted by this Court.

26.     US Data denies the receipt of some or all of the alleged nondisclosure requests.

27.     US Data denies that the requests were valid, denies that the assignments were valid, and denies that the Assignors all qualify as Covered Persons under Daniel's Law.

28.     When Atlas' attack started to bombard US Data's system, US Data immediately believed same to be spam.

29.     However, in an abundance of caution US Data began immediately processing the requests received.  Additionally, in an effort to streamline compliance, on January 19, 2023, US Data emailed legal@atlasmail.com advising that Atlas was flooding US Data's privacy email with thousands of opt out requests.  US Data advised Atlas it was "happy to review, manage, and get back to [Atlas] regarding these requests – but there has got to be a better way then flooding [US Data's] email." US Data requested all the requests in a .csv (comma-separated values) file and provided an example of how US Data would prefer the information submitted.

30.     When no response was received, US Data sent a second email on January 23, 2024 asking for a response stating: "Your website has no other way to contact you other than this email address.  Please respond, we are now up to over 30,000 emails from your company!!"

31.    On January 26, 2024, "Matt" from Atlas contacted US Data via phone[2] advising that Atlas would provide US Data with a login and temporary password to Atlas' "dashboard," which login information was received later that day from notifications@dsrcompliance.com with a subject line "Welcome to DSRCompliance.com."

32.    On January 27, 2024, Matt emailed US Data stating that the login information can be used to access the "dashboard" from which a .csv file could be generated via a password-protected .zip file.

33.    On January 30, 2024, US Data confirmed receipt and advised they would access the "dashboard" in the coming weeks[3] to process the requests.

34.    On February 19, 2024, US Data reached out to Matt because the "dashboard" login required downloading an app to a cellular telephone.  US Data requested assistance and inquired if there was a PC option.

35.    When Matt at Atlas failed to respond, US Data followed up via email on February 21, 22, and 26, 2024.  US Data also called the telephone number Matt had provided, but received a voicemail message stating that the voicemail was not yet set up.

---

[2] Matt had apparently emailed US Data back on January 22, 2024, but his email was lost in the barrage of opt-out requests being sent by Atlas.

[3] None of the opt-out requests nor communications with Matt referenced any time period for compliance, let alone a ten-day period.

36.    On February 26, 2024, Matt finally responded stating that Atlas had already instituted litigation against US Data.  US Data responded explaining that it had processed the requests despite Atlas sending them in an onerous, unreasonable, time consuming, and unverified manner.  US Data advised Matt that US Data's outreach to Atlas was solely aimed at a more efficient method of delivering such requests and requested that future requests in excess of 100 records be sent via .csv or .xlsx format with documentation evidencing Atlas' authorization to act.

37.    On February 29, 2024, Atlas, through counsel, finally advised that it would walk US Data through the compliance platform.  US Data responded that it had already "completed processing the 48,789 emails with consumer information."

38.    US Data was proactive, transparent, and acted in good faith to not only act promptly in response to the initial voluminous, unwieldy, and improperly sent requests, but also in its efforts to collaborate directly with Atlas to create a solution going forward.

39.    As soon as was possible given that Atlas' tactics that were clearly aimed at making compliance difficult if not impossible, US Data fully complied with all requests and Atlas advised it had already filed suit nonetheless and in spite of US Data working directly with Atlas on compliance procedures.

40.    Indeed, it is evident that a substantial volume of Atlas' requests were deliberately transmitted at the very beginning of the year—in early January of

2024—during a period when many businesses, including US Data's, were not yet operating at full staffing levels following the holiday shutdown. The volume, timing, and nature of these submissions, as well as Atlas' non-responsiveness to US Data's pleas for a better way to transmit the requests, failure to advise of any compliance deadline, and Atlas' confusing "platform" to which US Data was never able to gain access, strongly evince an intentional attempt by Atlas to create a compliance failure by making timely processing impossible.

41.    Following Plaintiffs' implementation of this litigation, in spite of US Data's proactive, hands-on compliance efforts, on April 18, 2024[4] and June 17, 2025 (Dkt. No. 46), the Court ordered Atlas to produce lists of the Assignors (herein a "List" or the "Lists").

42.    Based upon the Lists, it is abundantly clear that Atlas sent its spam attack of tens of thousands of nearly identical emails from the same unknown handle to US Data with the purpose and intention of frustrating the ten-day compliance period under Daniel's Law.

43.    The Lists show that Atlas, indeed, sent multiple separate emails on behalf of the same Assignors (e.g., one email for an address, one email for a phone

---

[4] This Order was not entered in US Data's case as US Data was not served until June 11, 2024 (months after US Data had confirmed its compliance to Atlas) and was removed June 27, 2024 after its entry.  Atlas nonetheless sent the ordered List on May 5, 2025, over a year after same was ordered.

number, one email for an alternate phone number) to generate an even higher volume of emails in its calculated cyber-attack against US Data, in an effort to create multiple claims per Assignor and to further exacerbate the damage to US Data's computer systems and business.  In some instances, upwards of five separate email requests were generated by Atlas for a single Assignor.

44.    To be sure, as Ordered by this Court, Atlas first provided a List of some 48,302 alleged non-disclosure requests emails.

45.    Then in response to the second Order of this Court, Atlas sent an additional List purporting to provide US Data with "A 'Covered Persons list', which includes, for both individuals plaintiffs and the 'Covered Persons' (as defined in the Complaint), the dates the [alleged 48,294] takedown notices were [supposedly] delivered to defendants and the 'category' of covered person into which each person fits."

46.    As demonstrated by the Lists, it appears that some 48,302 - 48,294[5] separate emails were sent – allegedly on behalf of about 19,000 Assignors. Many of these alleged requests are duplicates, list different addresses and different phone numbers for the same Assignor, and otherwise appear to have separate requests for information for the same Assignor.

---

[5] Counsel requested an explanation of the discrepancy between the number of purported opt-out requests on these two lists and Atlas never provided an explanation.

47.    The Lists allege that Atlas sent these approximately 48,000 emails to US Data in a calculated, nearly simultaneous, and massive fashion following the 2024 New Years Holiday, *i.e.*, about 7,000 emails per day continuously from January 6-13, 2024.

48.    Atlas created and designed this computer-based attack upon US Data, flooding US Data system and servers with tens of thousands of emails, in an attempt to manufacture claims for the Assignors, and profit for Atlas.

49.    Atlas purposefully made the Lists unmanageable and difficult to work with as, for example, they were not searchable nor editable, listed numerous line items for each Assignor, and could not be easily imported into a compliance platform.  Same were sent to further frustrate compliance efforts.

50.    Atlas could have, and should have, utilized US Data's pre-existing opt-out platform, which would have automatically processed all takedown requests immediately.   Instead, Atlas chose to utilize a targeted spam attack, feigned cooperation, and provision of Court-ordered Lists that appear aimed at preventing compliance in an effort to create claims.

51.    Notably, on September 30, 2024, in response to Atlas advising that additional opt-out requests were coming and based on Atlas' prior representation that it was happy to receive information regarding how to process future requests, counsel advised Atlas that US Data's opt-out platform should be utilized for future

requests.  US Data, through counsel, also reiterated its prior request that bulk opt-outs be provided in an .csv file to streamline processing.  However, Atlas refused to provide a .csv file absent a one-sided "confidentiality" agreement,[6] refused to negotiate the terms thereof, and thereafter continued to send emails rather than use US Data's opt-out platform.  Atlas' refusal to work with US Data or submit requests on the pre-existing opt-out platform further confirms Atlas has no desire or intent to streamline or facilitate compliance, but only to frustrate businesses and manufacture claims.

52.    US Data's computer-based technology, and its computers/systems, are used in interstate and foreign commerce and/or communications.

53.    In order to become a customer of US Data and gain access to US Data's services and computer platform, a potential customer must request a free quote detailing the services they are requesting.  US Data then generates a quote detailing the services to be provided, the cost thereof, and the terms to which the customer is agreeing, which include and incorporate US Data's Terms and Conditions.  The customer then has to sign off on the quote and remit payment to receive US Data's goods and services.

---

[6] Atlas' demand for a "confidentiality" agreement was nonsensical given that US Data was simply requesting a .csv file that would show all of the information Atlas had purportedly already sent it via email.

30

54.    The Terms and Conditions to which customers agree in executing the quote provide, amongst other things, that the customer "shall not: re-rent, re-use or re-market any list, or otherwise permit any use of the products or services by or for the benefit of any party other than Client, or otherwise publish, distribute or permit disclosure of the products or services, other than to employees of the Client for use in the Client's business or as contemplated on the face of this Invoice."  Moreover, the customer "agrees to reimburse US Data for all claims, damages, costs, and expenses, including reasonable attorney's fees, incurred by US Data arising out of Client's use of the products or services, or Client's failure to comply with the terms hereof."

55.    The Complaint alleges that Atlas brings claims against US Data "as assignee of the claims of approximately 19,727 individuals." Complaint at ¶ 25.

56.    The Complaint alleges US Data violated Daniel's Law without advising how US Data purportedly violated same or providing any example of such alleged violation. *See id.* at ¶ 53.

57.    Neither Atlas nor the individually named Plaintiffs are customers of US Data and as such, are not authorized to access US Data's computer systems, platform, or data.

58.    Atlas's only way to access US Data's data would be by hacking into the system, fraudulent access through the creation of a fake account, and/or unauthorized access through some third party posing as an US Data customer.

59.    Atlas's unauthorized access to US Data's computer systems and data was accomplished by improper means and a plan with at least one other unknown actor to fraudulently, purposefully, and knowingly harm US Data.

60.    US Data did not consent to or otherwise have knowledge of Atlas's unauthorized access.

61.    Atlas's unauthorized access to US Data's computer systems and data interfered with US Data's business and caused harm to US Data by, for example, loss of business, approximately $120,000 in lost revenue since July of 2024, approximately $70,000 on labor and costs in responding to the spam attacks, deciphering, documenting, and correcting the records and data, and otherwise responding to and addressing the unauthorized access, damage assessment costs, restoration costs, and interruption of services.

62.    In addition, US Data was forced to cease accepting new business for New Jersey data since Atlas launched its attack.

63.    As a direct result of Plaintiffs' actions, US Data suffered harm including, but not limited to, its computer systems, its email system, its business, and other damages related to same.

## <u>COUNT I</u>
## Violations of Federal Computer Fraud and Abuse Act
## (CFAA) 18 *U.S.C.A.* § 1030

64.    US Data repeats and realleges Paragraphs 1-63 of its Counterclaims as if fully set forth herein.

65.    US Data's website, platform, and database are protected computer(s) used in or affecting interstate or foreign commerce or communication pursuant to 18 U.S.C. §1030(e)(2)(B).

66.    Atlas's conduct constituted intentional unauthorized access and/or exceeding of authorized access of a computer in violation of the CFAA because, among other things Plaintiffs' spam attacked US Data's website, server, and/or database with tens of thousands of emails nearly simultaneously.

67.    Atlas's conduct constituted intentional unauthorized access and/or exceeding of authorized access of a computer in violation of the CFAA because, among other things Plaintiffs are not customers of US Data and were not authorized to use, access, or obtain US Data's computers and data.

68.    Atlas's acted knowingly and with intent to defraud by purposefully accessing a protected computer without authorization and with intent to defraud, and by accessing a protected computer without authorization or in excess of falsely obtained authorization and using such access to obtain or alter information that Atlas's is not entitled to obtain or alter.

69.     Atlas's unauthorized and/or improper exceeding of falsely obtained authorized access to US Data's computer caused harm and interruption to US Data's business and otherwise caused damages by the impairment to the integrity or availability of data, a program, a system, or information, costs incurred by US Data in responding to the offense and/or restoring the system.

70.     Plaintiffs' unauthorized access to US Data's computer and subsequent improper use of US Data's data violated US Data's Terms and Conditions giving rise to an indemnification obligation.

71.     As such, Atlas's actions caused damages and loss suffered by US Data which, include but are not limited to, approximately $70,000 on labor and costs in responding to the spam attacks in one-year period.

72.     As a result, US Data is entitled to and demands civil remedies for Plaintiffs' violations of the CFFA, including, but not limited to, injunctive relief, compensatory damages, statutory damages, punitive damages, indemnification, attorney's fees and costs, pre- and post-judgment interest, and all other relief as the Court deems proper and just.

## COUNT II
### Violations of New Jersey Computer Related Offenses Act
### *N.J.S.A.* § 2A:38A-3 ("NJCROA")

73.     US Data repeats and realleges Paragraphs 1-72 of its Counterclaims as if fully set forth herein.

74.     Plaintiffs purposely and/or knowingly accessed US Data's computer, computer system, or network without authorization or in excess of authorization as detailed above, *e.g.*, by way of the massive email spam attack and/or by way of unauthorized access through improper means.

75.     Plaintiffs purposely and/or knowingly accessed, altered, damaged, took and/or destroyed US Data's data and/or systems without authorization.

76.     US Data was damaged in business and/or property as a result of the unauthorized access and related misconduct of Atlas, by, for example, loss of business, over $120,000 in lost revenue, approximately $70,000 on labor and costs incurred in responding to and addressing the unauthorized access, damage assessment costs, restoration costs, and interruption of services.

77.     Atlas acted purposefully and/or knowingly in their unauthorized actions.

78.     Atlas unauthorized access to US Data's computer and subsequent improper use of US Data's data violated US Data's Terms and Conditions giving rise to an indemnification obligation.

79.     As a result, US Data is entitled to and demands civil remedies for Atlas's violations of the NJCROA, including, but not limited to, injunctive relief, compensatory damages, statutory damages, punitive damages, indemnification,

attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## COUNT III
**Tortious Interference**

80.     US Data repeats and realleges Paragraphs 1-79 of its Counterclaims as if fully set forth herein.

81.     US Data has a reasonable expectation of economic advantage and valid, protectable interest in protecting its economic relationship with its current customers and prospective customers.

82.     US Data has business and contractual relationships with its customers.

83.     Atlas knew of US Data's economic relationships and reasonable expectation of economic advantage with its customers and prospective customers.

84.     Atlas purposely, intentionally, and maliciously interfered with US Data's economic relationships and reasonable expectation of economic advantage with its customers and prospective customers, without justification, by way of the massive, coordinated spam attack of tens of thousands of emails to US Data and/or by way of unauthorized access through improper means.

85.     Atlas's actions in this regard inhibited US Data's ability to service their customers and potential customers, caused massive disruption to services, and among other things, caused US Data to cease providing services in and related to New Jersey.

86.    As a result of Plaintiffs' actions and interference, US Data has suffered and continues to suffer losses and damages, the full amount of which shall be proven at trial.

87.    As a result, US Data is entitled to and demands civil remedies for Plaintiffs' Tortious Interference with current and perspective business advantage, including, but not limited to, injunctive relief, compensatory damages, punitive damages, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

**COUNT IV**
**Civil Fraud**

88.    US Data repeats and realleges Paragraphs 1-87 of its Counterclaims as if fully set forth herein.

89.    In January of 2024 and February of 2024, Atlas misrepresented that it was working with US Data in a collaborative effort to ensure compliance and in the best interest of the Assignors, specifically "Matt" from and on behalf of Atlas misrepresented that Atlas would provide dashboard access to US Data for cooperation and streamlined compliance purposes. From January through February of 2024, Matt delayed, stalled, and otherwise misrepresented Atlas's cooperation.

90.    Atlas knew its representations were false and misleading and same were designed to feign cooperation and stall in an effort to frustrate compliance and manufacture bogus claims against US Data, as detailed above.

91.    Atlas intended for US Data to rely on their misrepresentation and intended to induce action on such reliance.

92.    US Data reasonably relied upon Atlas's misrepresentations.

93.    US Data was damaged and suffered loss as a result of US Data's and/or US Data's customers' reliance on Atlas's misrepresentation.

94.    US Data only allows access to its platform and data to US Data customers.

95.    Atlas is not a US Data customer.

96.    Atlas could not have accessed US Data's platform and/or data unless Atlas or someone on its behalf misrepresented itself as or to a US Data customer.

97.    Such misrepresentation is a material fact as status as a customer, or someone authorized to access US Data's platform and/or data is required for such access.

98.    Atlas knew they were not US Data's customers, nor were they permitted access to US Data's data and/or platform.

99.    Atlas intended for US Data to rely on their misrepresentation and intended to induce action on such reliance.

100.    US Data reasonably relied upon Atlas's misrepresentations.

101.    US Data was damaged and suffered loss as a result of US Data's and/or US Data's customers'its reliance on Atlas's misrepresentation.

102.    Atlas's unauthorized access to US Data's computer and subsequent improper use of US Data's data violated US Data's Terms and Conditions giving rise to an indemnification obligation.

103.    Atlas misrepresented that the tens of thousands of emails it sent to US Data were from "covered persons" or otherwise constituted valid requests under Daniel's Law.

104.    Atlas knew its representations were false and/or otherwise unverified – for example, by creating and sending multiple emails per Assignors (see about 48,000 emails allegedly sent on behalf of about 19,000 Assignors) in an effort to manufacture additional invalid claims in its spam attack and by failing to confirm the Covered Person status of the Assignors as admitted in Atlas' own terms and conditions.

105.    Atlas intended for US Data to rely on its misrepresentations.

106.    US Data was forced to and had reasonably relied on the misrepresentations by Plaintiffs.

107.    US Data was, and continues to be, damaged and suffered loss as a result of US Data's reliance on Atlas's misrepresentation.

108.    As a result, US Data is entitled to and demands judgement against Atlas/ for Civil Fraud, including, but not limited to, injunctive relief, compensatory

damages, punitive damages, indemnification, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## COUNT V
## Civil Conspiracy

109.   US Data repeats and realleges Paragraphs 1-108 of its Counterclaims as if fully set forth herein.

110.   Atlas and/or one or more entities or individuals jointly, individually, and/or through someone acting on their behalf, conspired and agreed unlawfully access US Data's computers, platform, and/or data and to take, harm, or otherwise use such unlawfully obtained information.

111.   Atlas and/or one or more entities or individuals jointly, individually, and/or through someone acting on their behalf, took overt steps to effectuate such plan and did in fact unlawfully gain access to US Data's computers, platform, and/or data.

112.   Atlas and/or one or more entities or individuals jointly, individually, and/or through someone acting on their behalf, took additional overt steps and gained access to and took data from US Data's computers, platform, and/or data.

113.   Atlas and/or one or more entities or individuals jointly, individually, and/or through someone acting on their behalf, conspired and agreed unlawfully violate US Data's Terms and Conditions.

114.   The actions of Atlas and/or one or more entities or individuals jointly, individually, and/or through someone acting on their behalf, damaged and was the proximate cause of damage to US Data.

115.   Atlas and/or one or more entities or individuals unauthorized access to US Data's computer and subsequent improper use of US Data's data violated US Data's Terms and Conditions giving rise to an indemnification obligation.

116.   As a result, US Data is entitled to and demands judgement against Atlas and its co-conspirator(s) for Civil Conspiracy, including, but not limited to, injunctive relief, compensatory damages, punitive damages, indemnification, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## **Prayer for Relief**

Wherefore, US Data prays for relief to the extent and as permitted by law, as follows:

A.   For judgment against Atlas and Plaintiffs, and in favor of US Data, on each of US Data's Counterclaims I – V;

B.   Statutory damages;

C.   Injunctive relief;

D.   Compensatory damages;

E.   Actual damages;

41

F.    Punitive Damages;

G.    Indemnification;

H.    Attorney's fees and costs;

I.    Pre- and Post-Judgement interest; and

J.    Such other relief as the Court deems proper and just.

## **<u>DEMAND FOR JURY TRIAL</u>**

US Data hereby demands a trial by jury on all issues as provided by *Fed. R. Civ. P.* 38(b) and *L. Civ. R.* 38.1.


DATED: October 2, 2025                      Respectfully submitted,

                                            **GREENSPOON MARDER LLP**
                                            *Attorneys for Defendant*
                                            *US Data, Inc.*

                                            */s/ Kelly M. Purcaro*
                                            Kelly M. Purcaro, Esq.


## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 2, 2025, I filed a true and correct copy of the foregoing with the court and a copy will be served upon all parties of record via CM/ECF.

                                            */s/ Kelly M. Purcaro*
                                            Kelly M. Purcaro, Esq.